**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| MAGGIE MENG, | : |
| Plaintiff, | : Civil Action No. 19-18118(FLW) |
| v. | : |
| PU DU, | : **OPINION** |
| Defendant. | : |

**WOLFSON, Chief Judge:**

Presently before the Court is a Motion by Plaintiff Maggie Meng ("Plaintiff") to partially dismiss certain counterclaims of Defendant Pu Du ("Defendant"), which arise out of a disputed sale of real property between the parties. Pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiff argues that Defendant's counterclaims for promissory estoppel, fraud, and abuse of process must be dismissed for failure to state a claim upon.[1] For the reasons that follow, Plaintiff's Motion to dismiss is **GRANTED**. Defendant's promissory estoppel, fraud, and abuse of process counterclaims are dismissed without prejudice.

**I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The following factual allegations are taken from Defendant's Answer and are accepted as true for the purpose of this Motion. In August 2010, Plaintiff approached Defendant to sell a house (the "Property") located in West Windsor, New Jersey. Defendant's Answer, Affirmative Defenses, Counterclaim and Demand for Jury Trial ("Answer"), ¶ 7, ECF No. 12-1. Plaintiff was

---

[1] Plaintiff has not moved to dismiss Defendant's counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing.

1

allegedly facing financial difficulties, and Plaintiff's bank had initiated foreclosure proceedings against the Property. *Id.* ¶ 8. Furthermore, the house had allegedly been severely damaged by fire and was not habitable. *Id.* ¶ 11. Plaintiff also allegedly informed Defendant that she and her husband, Mingdi Chen ("Chen"), were going through a divorce, and she wished to avoid bankruptcy. *Id.* ¶¶ 13-14.

As a result, Defendant claims that Plaintiff offered to sell him the Property in exchange for Defendant rescuing the Property from foreclosure, assuming Plaintiff's mortgage, accepting the Property on an as-is basis, and paying off all liens recorded on the Property's title. *Id.* ¶ 15. As part of the agreement, Plaintiff allegedly asked Defendant to delay requesting the actual title transfer, because Plaintiff wished to keep the transaction simple until her finances stabilized. *Id.* ¶¶ 16-17. According to Defendant, he trusted Plaintiff because they had known each other for 20 years, and because he was a "protégé" of Plaintiff's father. *Id.* ¶ 18.

Defendant accepted Plaintiff's offer in August 2010, and he allegedly began performing according to the parties' oral terms by wiring money to Plaintiff's bank and other parties associated with the foreclosure, taking on Plaintiff's monthly mortgage payments, rehabilitating the Property, and paying all taxes and bills associated with the Property. *Id.* ¶ 19. As a result, Plaintiff allegedly avoided foreclosure and bankruptcy. *Id.* ¶ 20. Defendant moved into the Property after finishing repairs and continues to hold possession of it. *Id.* ¶ 22.

Defendant alleges that, in 2012, Plaintiff was in better financial condition, and therefore, agreed to formalize the parties' 2010 real estate transaction. *Id.* ¶ 26. On December 24, 2012, the parties executed a standard real estate contract. *Id.* ¶ 28. However, the title, mortgage statement, and tax roll allegedly named both Plaintiff and her former husband, Chen, as joint owners of the Property. *Id.* ¶ 25. Defendant contends that he attempted to obtain a loan after signing the 2012

contract, but he was denied, because the contract was void without the signatures of both Plaintiff and Chen. *Id.* ¶ 32. Plaintiff was allegedly unable to obtain Chen's signature to fully execute the contract. *Id.*

In 2014, Plaintiff claimed that she was once again in touch with Chen. *Id.* ¶ 33. Subsequently, Plaintiff and Defendant met once more to formalize the 2010 sale of the Property. *Id*. The parties eventually settled upon a purchase price of $200,000, which reflected the total out-of-pocket expenses that Defendant had incurred in accordance with the terms of the 2010 oral agreement. *Id.*[2] ¶¶ 30, 36, 46. In turn, Plaintiff agreed to provide Defendant with a deed, which would allow Defendant to receive clear title to the Property. *Id.* ¶ 39. On March 22, 2014, Plaintiff and Defendant signed a second written contract, and Chen also signed the document on a later date. *Id.* ¶¶ 37-38.

After the parties signed the 2014 contract, a conflict arose between Plaintiff and Defendant regarding the performance of transferring title to the Property. *Id.* ¶¶ 39-50. Defendant alleges that Plaintiff provided him with a deed bearing only Plaintiff's signature. *Id.* ¶ 45. However, since the deed lacked Chen's signature, Defendant was allegedly unable to record the deed, obtain a loan based on the deed, or receive clear title to the Property. *Id.* ¶¶ 39, 47. In response, Plaintiff argued that Chen was not required to sign the deed in order to transfer title, because a prenuptial agreement had left Plaintiff as the sole owner of the Property. *Id.* ¶ 41. However, Defendant alleges that Plaintiff refused to provide a copy of the divorce judgment or the prenuptial agreement, and that Plaintiff refused to help Defendant search for Chen to secure his signature for the deed. *Id.* ¶¶ 48-

---

[2]   In the Complaint, Plaintiff alleges a different interpretation of the 2014 contract's terms. Plaintiff alleges that the 2014 contract obligated Defendant to pay $200,000 in cash, apart from the expenses Defendant incurred to rehabilitate the Property and rescue it from foreclosure. Complaint, ¶¶ 66-67.

3

50. Defendant also alleges that Plaintiff falsely represented her intention to ever sell the Property or deliver a recordable deed in order to transfer title to Defendant. *Id.* ¶¶ 68-69.

On September 19, 2019, Plaintiff filed a Complaint against Defendant,[3] demanding judgment to quiet title to the Property in her favor, seeking injunctive relief for Defendant to vacate the Property, and asserting claims for unlawful detainer, breach of contract, unjust enrichment, and fraud. ECF No. 1, Plaintiff's Complaint ("Complaint"), at 9-17. Defendant filed his Answer, Affirmative Defenses, and Counterclaims on December 23, 2019. Defendant asserts five counterclaims: breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, fraud, and abuse of process. On January 9, 2020, Plaintiff moved to dismiss Defendant's promissory estoppel, fraud, and abuse of process counterclaims for failure to state a claim pursuant to Rule 12(b)(6). Defendant opposes the motion to dismiss.

## II.    STANDARD OF REVIEW

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks and citation omitted). While Federal Rule of Civil Procedure 8(a)(2) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss,

---

[3]   Curiously, Defendant has not named Plaintiff's ex-husband, Chen, as a third-party defendant pursuant to Fed. R. Civ. P. 14(a), even though Chen is a party to the 2014 contract.

the Complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To determine whether a plaintiff has met the facial plausibility standard mandated by *Twombly* and *Iqbal*, courts within this Circuit engage in a three-step progression. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "outline the elements a plaintiff must plead to state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the Court "peel[s] away those allegations that are no more than conclusions and thus not entitled to the assumption of trust. *Id.* Finally, where "there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

### III. ANALYSIS

#### A. Promissory Estoppel Counterclaim

Plaintiff moves to dismiss Defendant's promissory estoppel counterclaim as a matter of law, on the basis that the New Jersey Statute of Frauds prevents courts from enforcing real estate agreements that transfer title to property without a written contract. Plaintiff's Brief ("Pl. Br.") at 9, ECF No. 10-1. Defendant responds by arguing that New Jersey law allows for the enforcement of oral real estate contracts, and that he has sufficiently pled a promissory estoppel claim based on the 2010 oral agreement, which was later formalized in writing. Defendant's Brief ("Def. Br.") at 4-6, ECF No. 12.

5

To state a promissory estoppel claim under New Jersey law, a party must plead each of the following four elements: "(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington*, 194 N.J. 223, 253 (2008). Notwithstanding the Statute of Frauds, a court may apply the equitable doctrine of promissory estoppel to enforce an oral agreement in the absence of an enforceable contract. *Pop's Cones, Inc. v. Resorts Int'l Hotel, Inc.*, 307 N.J. Super. 461, 468-71 (App. Div. 1998); *see also Goldfarb v. Solimine*, No. A-3740-16T2, 2019 N.J. Super. Unpub. LEXIS 1472, at *22 (App. Div. June 26, 2019) ("We have adopted the Restatement's rule that a party may proceed under a theory of promissory estoppel even where the Statute of Frauds renders an oral contract otherwise unenforceable"). *Restatement (Second) of Contracts* § 139(1) (Am. Law Inst. 1979) specifically provides that:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise.

*See Mazza v. Scoleri*, 304 N.J. Super. 555, 560 (App. Div. 1997) (adopting § 139(1) as an exception to the Statute of Frauds).

While it appears that contrary to Plaintiff's argument, in New Jersey, the doctrine of promissory estoppel may be invoked to enforce an oral promise that does not comport with the Statute of Frauds, Defendant's promissory estoppel counterclaim, nevertheless, fails on a more fundamental reason. "[U]nder New Jersey law, liability based on quasi-contractual principles cannot be imposed 'if an express contract exists concerning the identical matter.'" *Freightmaster USA, LLC v. FedEx, Inc.*, No. 14-3229, 2015 U.S. Dist. LEXIS 41519, at *15 (D.N.J. Mar. 31, 2015) (quoting *Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.*, 716 F.2d 220, 226-27 (3d Cir. 1983). Promissory estoppel is a quasi-contractual theory and "generally serves as a stop-gap

6

where no valid contract exists to enforce a party's promise." *Kiss Elec., LLC v. Waterworld Fiberglass Pools, N.E., Inc.*, No. 14-3281, 2015 U.S. Dist. LEXIS 37547, at *15 (D.N.J. Mar. 25, 2015). Therefore, a promissory estoppel claim "cannot be maintained where a valid contract fully defines the parties' respective rights and obligations." *Hillsborough Rare Coins, LLC v. ADT LLC*, No. 16-916, 2017 U.S. Dist. LEXIS 67113, at *15 (D.N.J. May 2, 2017) (quotation omitted). So, in order to assert a claim based on a quasi-contractual theory, a party must plead that a contract is either lacking or invalid. *Freightmaster USA, LLC*, 2015 U.S. Dist. LEXIS 41519, at *15; *see also Zydus Worldwide DMCC v. Teva API Inc.*, No. 19-17086, 2020 U.S. Dist. LEXIS 89185, at *40 (D.N.J. May 20, 2020) (holding that a promissory estoppel claim must be dismissed when "[t]he injury alleged is intrinsic to the terms and conditions" of a written contract); *Hill v. Commerce Bancorp, Inc.*, No. 09-3685, 2012 U.S. Dist. LEXIS 26831, at *43 (D.N.J. Mar. 1, 2012) (holding that a party "cannot prevail on both a breach of contract and promissory estoppel theory for the same conduct, since promissory estoppel by its definition assumes that a contract supported by consideration has not been formed").

Here, Defendant's promissory estoppel claim is premised on the 2010 oral agreement. Plaintiff allegedly promised to transfer title to the Property in exchange for Defendant rescuing the Property from foreclosure, assuming Plaintiff's mortgage, paying off all liens recorded on the Property's title, and bearing the cost of rehabilitating the Property from fire damage. Answer, ¶¶ 15-17. Defendant has pled that he relied on the promise to his detriment, because he incurred expenses by paying off the liens, making Plaintiff's mortgage payments, restoring the property to habitable condition, and paying all of the Property's bills and taxes. *Id*., ¶¶ 19-21. However, Defendant has also alleged that the 2014 written contract formalized this same exchange of obligations. Plaintiff once again agreed to transfer clear title to Defendant, and the purchase price

7

of $200,000 allegedly reflected the cost to Defendant of complying with the terms of the 2010 agreement.

Therefore, Defendant's promissory estoppel counterclaim is dismissed, because it is predicated on the same terms and conditions as the 2014 express contract. When a valid contract fully defines the parties' rights and obligations, a party may only assert a breach of contract claim, not a quasi-contractual claim such as promissory estoppel. While Plaintiff and Defendant disagree on the interpretation of the parties' respective obligations under the 2014 contract, they do not dispute the contract's validity or enforceability. Accordingly, Defendant's promissory estoppel counterclaim is dismissed without prejudice because it simply restates his breach of contract claim. However, I note that Defendant may move to amend his Answer to include a promissory estoppel counterclaim in the event that the 2014 contract is later found to be unenforceable.

> **B. Defendant's Common Law Fraud Counterclaim is Barred by the Economic Loss Doctrine**

Plaintiff argues that Defendant's common law fraud counterclaim must be dismissed because his allegations do not meet Fed. R. Civ. P. 9(b)'s heightened pleading standard for claims of fraud or mistake. Pl. Br. at 10-11.[4] Furthermore, Plaintiff argues that Defendant has not pled which specific misrepresentations were allegedly false. *Id*. at 11-12. Defendant responds by arguing that he has pled the essential factual background to state a common-law fraud claim. Def. Br. at 6. In that regard, Defendant argues that he sufficiently alleged that Plaintiff misrepresented her intention to deliver a deed and transfer title to the Property. *Id.*

---

[4] The Answer does not clearly state which specific cause of action Defendant is pursuing in this count, and the Answer ambiguously labels this counterclaim as "Fraud, Deceit, Misrepresentation." Answer, ¶ 67. However, Defendant's opposition brief describes this count as fraud, and cites to *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997), which recites the elements of common-law fraud. Therefore, the Court will construe this counterclaim as such.

8

To state a claim for fraud, a party must plead each of the following five elements: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997). Pursuant to Fed. R. Civ. P. 9(b), fraud claims are subject to heightened pleading standards. *Lum v. Bank of Am.*, 361 F.3d 217, 220 (3d Cir. 2004). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

However, in New Jersey, the economic loss doctrine provides that "a party typically may not recover in tort for damages caused by a breach of contract." *Montclair State Univ. v. Oracle USA, Inc.*, No. 11-2867, 2012 U.S. Dist. LEXIS 119509, at *12 (D.N.J. Aug. 23, 2012). "The economic loss rule 'defines the boundary between the overlapping theories of tort law and contract law by barring the recovery of purely economic loss in tort.'" *Dean v. Barrett Homes, Inc.*, 406 N.J. Super. 453, 470 (App. Div. 2009) (quoting R. Joseph Barton, Note, *Drowning in a Sea of Contract: Application of the Economic Loss Rule to Fraud and Negligent Misrepresentation Claims*, 41 Wm. & Mary L. Rev. 1789 (2000)), *rev'd on other grounds*, 200 N.J. 207 (2009). In other words, "[t]he economic loss doctrine 'prohibits [a party] from recovering in tort economic losses to which their entitlement only flows from a contract.'" *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562 (D.N.J. 2002) (quoting *Duquesne Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 618 (3d Cir. 1995)).

A tort claim may only be asserted alongside a breach of contract claim if the tortious conduct is "extrinsic" to the contract between the parties. *State Capital Title & Abstract Co. v.*

*Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 676 (D.N.J. 2009). "For instance, [a party] may be permitted to proceed with tort claims sounding in fraud in the inducement so long as the underlying allegations involve misrepresentations unrelated to the performance of the contract." *Id*. Accordingly, "an alleged misrepresentation that 'involve[s] a nonfulfillment of a warranty or guarantee contained within the contract itself' can not be said to be extraneous to the contract." *Montclair State Univ.*, 2012 U.S. Dist. LEXIS 119509, at *15 (quoting *Florian Greenhouse, Inc. v. Cardinal IG Corp.*, 11 F. Supp. 2d 521, 528 (D.N.J. 1998)).

In *Dwyer v. Blue Sea Prods., LLC*, No. 18-15182, 2019 U.S. Dist. LEXIS 132370, at *12 (D.N.J. Aug. 7, 2019), a plaintiff asserted an intentional misrepresentation claim against a former employer. The plaintiff alleged that he entered into a contract with his employer to receive profit share bonuses, but the employer misrepresented its intention to perform and instead planned to pay the plaintiff less than he was owed. *Id*. However, the plaintiff's intentional misrepresentation tort claim was dismissed, because it was substantively identical to his breach of contract claim; as the plaintiff's "sole loss was the loss of the benefit of that bargain." *Id*. The court reasoned that the claim was "premised 'on fraudulent performance of the contract itself' and is therefore barred by the economic loss doctrine." *Id*. at *12-13 (quoting *Unifoil Corp. v. Cheque Printers & Encoders*, 622 F. Supp. 268, 271 (D.N.J. 1985)).

Here, Defendant's common law fraud counterclaim is barred by the economic loss doctrine. Defendant cannot recover in tort for losses flowing from a breach of any contract, because the tortious conduct that Defendant has alleged is intrinsic to the contract itself. Defendant alleges that "Plaintiff made false misrepresentations of material fact, including but not limited to, her intention to actually sell the property to Defendant, and her promise to deliver a recordable deed

10

in order to transfer title to Defendant."[5] Answer, ¶ 76.[6] As in *Dwyer*, these alleged misrepresentations are premised on the fraudulent performance of the contract itself, not any other distinct breach. Further, Defendant's sole alleged losses were the deed and title to the Property, which are identical to the loss of the benefit of the contract. Since the only alleged misrepresentations involve nonfulfillment of promises set forth in the contract, Defendant cannot state both a breach of contract claim and a tort claim for common law fraud. Therefore, this counterclaim is dismissed without prejudice.

### C. Defendant Has Not Pled Each Necessary Element of an Abuse of Process Counterclaim

Finally, Plaintiff argues that Defendant has not pled the necessary elements of an abuse of process claim, because Defendant has not alleged that Plaintiff had an ulterior motive for serving process, or that Plaintiff performed an act that perverted the legitimate use of process. *Id*. In response, Defendant argues that he has sufficiently pled an abuse of process counterclaim by alleging that Plaintiff filed the Complaint in an attempt to harass him into rescinding the purchase contract and returning the Property. Def. Br. at 7.

To state a claim for the tort of abuse of process, a party must allege both (1) an ulterior motive; and (2) a further act after the issuance of process that represents a perversion of the legitimate use of process. *Zebrowski v. Wells Fargo Bank, N.A.*, 657 F. Supp. 2d 511, 517 (D.N.J.

---

[5] While the Counterclaim does not identify which misrepresentation, *i.e.*, Plaintiff's alleged promise made in 2010 related to the oral agreement or the promise made in connection with the 2014 contract, underlies the fraud claim, that distinction does not make a meaningful difference, because both promises are the same in substance; that is, Plaintiff promised to sell the Property and deliver a recordable deed.

[6] Although the Answer alleges that Plaintiff made other false representations "not limited to" the ones listed, this allegation is not sufficient to state a claim for common law fraud. Indeed, generalized and unspecified allegations of fraud do not meet Fed. R. Civ. P. 9(b)'s requirement to "state with particularity the circumstances constituting fraud or mistake."

2009). "Such perversion exists where the process is used to 'coerce or oppress' [a party] or the process is used in a manner not contemplated by law." *Id*. Unlike the tort of malicious *use* of process, "malicious *abuse* of process lies not for commencing an improper action, but for misusing or misapplying process after it is issued." *Hoffman v. Asseenontv.Com, Inc.*, 404 N.J. Super. 415, 431 (App. Div. 2009) (emphasis added).[7] In *Zebrowski*, homeowners asserted an abuse of process claim against a bank, alleging that the bank initiated a foreclosure action with the ulterior motive of using the process to extract additional fees and penalties. 657 F. Supp. 2d at 517. However, the homeowner's abuse of process claim was dismissed because they did not allege that the bank committed any further improper acts after initiating the action. *Id*. at 518. "Where [a party] carries out process to its authorized conclusion, albeit with bad intentions, there is no valid claim for abuse of process." *Id*. (citing *Gambocz v. Apel*, 102 N.J. Super. 123, 127 (App. Div. 1968)).

Here, Defendant has pled the first element of an abuse of process claim, that Plaintiff's service of process was the result of an ulterior motive. Defendant alleges that Plaintiff filed the Complaint "in order to compel Defendant to rescind the contract and return the Property back to her, which they would otherwise not be legally compelled to do." Answer, ¶ 76. However, Defendant's abuse of process counterclaim, nevertheless, fails because Defendant has not alleged that Plaintiff took any further act representing a perversion of the legitimate use of process. In fact, Defendant has not alleged that Plaintiff took any steps after filing the Complaint to harass him into rescinding the purchase contract or surrendering the Property. Since filing a complaint, regardless

---

[7] "Further acts which lend themselves to an abuse of process include 'attachment, execution, garnishment, sequestration proceedings, arrest of the person and criminal prosecution and even such infrequent cases as the use of a subpoena for the collection of a debt.'" *Baglini v. Lauletta*, 338 N.J. Super. 282, 294 (App. Div. 2001) (quoting *Prosser & Keeton on Torts* § 121 at 899 (5th ed. 1984)). Defendant has not alleged that Plaintiff initiated any of these listed acts, or any other further act, after serving process.

of a plaintiff's intentions, cannot by itself serve as the basis for an abuse of process claim, this counterclaim is dismissed without prejudice.

### IV.     CONCLUSION

For the foregoing reasons, Plaintiff's Motion to dismiss Defendant's counterclaims is **GRANTED**. Defendant's fraud, promissory estoppel and abuse of process counterclaims are dismissed without prejudice. Defendant may move to amend these counterclaims if, during discovery, evidence reveals sufficient facts to support these claims.

DATED: August 11, 2020

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge